IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JARROD FRANTY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 22-1096 |
| | ) |
| FAYETTE COUNTY | ) |
| HOUSING AUTHORITY and | ) |
| ANDRE WALTERS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This action is brought pursuant to 42 U.S.C. § 1983 by Plaintiff Jarrod Franty ("Plaintiff") against his former employer, Fayette County Housing Authority (the "Housing Authority"), and Housing Authority Deputy Director Andre Walters ("Walters"), (collectively, "Defendants"). In his Second Amended Complaint, Plaintiff alleges that Defendants terminated his employment because of his political support of another individual, in violation of his rights under the First Amendment to the Constitution of the United States. Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") (Docket No. 34) and brief in support (Docket No. 35), and Plaintiff's brief in opposition (Docket No. 39). For the reasons set forth herein, Defendants' Motion to Dismiss will be granted.

**I. BACKGROUND**[1]

Since the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts alleged in the Second Amended Complaint that are relevant to the motion presently before the Court. Plaintiff was

---

[1] Plaintiff contends that the Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and § 1343(3). (Docket No. 33, ¶ 3).

1

formerly employed by the Housing Authority as a property manager. (Docket No. 33, ¶ 8). In that capacity, Plaintiff managed two properties. (*Id.* ¶ 9). In January of 2022, an apartment at one of those properties was abandoned and the former tenant left several items behind. (*Id.* ¶¶ 10, 11). In accordance with the Housing Authority's policies and procedures, Plaintiff was to remove the tenant's belongings from the apartment when it became vacant. (*Id.* ¶ 11). Via a private Facebook message sent by Plaintiff to another individual, Plaintiff offered to sell some of the items that had been left behind. (*Id.* ¶ 13). Thereafter, on or about March 7, 2022, Plaintiff's employment with the Housing Authority was terminated by Walters. (*Id.* ¶ 15). Walters informed Plaintiff that his discharge occurred as a direct result of his attempt to sell the abandoned items and his violation of the Housing Authority's social media policy. (*Id.* ¶ 17).

At the time of his discharge, Plaintiff's uncle, Harry Joseph ("Joseph") had recently, in or about February 2022, become the chairman of the Housing Authority's board of directors. (Docket No. 33, ¶ 25). Plaintiff alleges that he has "openly supported" Joseph's candidacy for chairman. (*Id.* ¶ 26). According to Plaintiff, an unnamed individual (who politically opposed Joseph) reported Plaintiff's private Facebook message to unnamed representatives of the Housing Authority (who were also politically opposed to Joseph), and Walters (who was also politically opposed to Joseph) terminated Plaintiff because of his political support for Joseph. (*Id.* ¶¶ 27-29). Additionally, according to Plaintiff, sometime after his discharge, two unnamed current employees of the Housing Authority told unnamed members of Plaintiff's community that Plaintiff was "set up" by Walters as a direct result of his connection to Joseph. (*Id.* ¶ 30). Plaintiff also avers that Joseph was informed by an unnamed former Housing Authority employee that Plaintiff was "set up," and that Plaintiff's discharge was a direct result of his connection to Joseph. (*Id.* ¶ 31).

The original Complaint in this matter named the Housing Authority as the sole defendant, and alleged claims of "Retaliation – Political Retaliation" and "Retaliation – Familial Association." (Docket No. 1). After the Housing Authority moved to dismiss the Complaint (Docket Nos. 9, 10), Plaintiff sought leave to amend his claims (Docket No. 11), which the Court granted (Docket No. 13). Plaintiff filed his Amended Complaint, naming Walters as an additional defendant, removing his claim of "Retaliation – Familial Association," and including new claims of "Stigma Plus" and "Selective Enforcement" under the 14th Amendment. (Docket No. 16). In response, Defendants filed a motion to dismiss the Amended Complaint and supporting brief, Plaintiff filed an opposition brief, and Defendants filed a reply. (Docket Nos. 20, 21, 24, 27). The Court held oral argument on Defendants' motion to dismiss the Amended Complaint, and granted Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket Nos. 31, 32, 38). The Court dismissed all claims without prejudice to amendment, and advised Plaintiff that he would be afforded one final opportunity to amend his claims. (*Id.*).

Plaintiff filed a Second Amended Complaint alleging two Counts against Defendants: (1) "Retaliation – Political Retaliation" under the First Amendment; and (2) "Stigma Plus" under the Fourteenth Amendment. (Docket No. 33). Defendants have moved for a third time to dismiss Plaintiff's claims. (Docket Nos. 34, 35). In response to Defendants' third motion to dismiss, Plaintiff states that he "respectfully withdraws his 'Stigma Plus' claim at Count II." (Docket No. 39 at 2 n.1). In accordance with Plaintiff's request, his claim at Count II will be *dismissed with prejudice*, pursuant to Federal Rule of Civil Procedure 41(a)(2). Plaintiff further responds that he opposes Defendants' motion to the extent it seeks dismissal of Count I of the

3

Second Amended Complaint.[2]  As the motion has been fully briefed by the parties, it is now ripe for decision.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).  Moreover, while "this standard does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

It should be further noted, therefore, that in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[2]  Although the Second Amended Complaint does not specify whether Plaintiff is suing Walters in his official or individual capacity, the Court notes that Count I is clearly brought against the Housing Authority and Walters in his official capacity since, in alleging Walters' conduct, Plaintiff repeatedly specifies that Walters' actions were taken in his capacity as Deputy Director of the Housing Authority.  (Docket No. 33, ¶¶ 16, 21, 29, 36).  Also, Plaintiff admittedly seeks to establish municipal liability in this action under *Monell*.  (Docket No. 39 at 5 (discussing *Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978)).  Moreover, "[a] suit under § 1983 against a municipal officer in his official capacity is in actuality a suit directed against the municipality that the officer represents.'"  *Snatchko v. Peters Twp.*, No. 2:12-cv-1179, 2012 WL 6761369, at *11 (W.D. Pa. Dec. 28, 2012) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)).  Thus, mindful that an official capacity claim "is generally merely another way of pleading an action against an entity of which an officer is an agent," the Court notes that "[s]uch a suit is properly treated as a suit against the entity."  *Id.*  Accordingly, the Court's analysis of Plaintiff's claim at Count I, herein, applies to such claim in its entirety as it considers Plaintiff's claim against both the Housing Authority and Walters in his official capacity.

plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted)).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (citing *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (citing *Iqbal*, 556 U.S. at 679). And finally, the Court assumes the remaining well-pleaded facts are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

The Court first addresses several preliminary issues. Plaintiff brings his constitutional claim at Count I pursuant to 42 U.S.C. § 1983, which does not create any substantive rights, but instead provides a remedy for deprivations of rights created by the Constitution of the United States or federal law. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Thus, "[t]o state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the

alleged deprivation was committed under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

Turning to the Constitutional right at issue in this matter, Plaintiff lodges a claim of "Retaliation – Political Retaliation" in violation of his Constitutional rights, "Specifically § 1983 and the First Amendment of the United States Constitution." (Docket No. 33 at 5). Plaintiff avers that, pursuant to the First Amendment, he has the "right" (without further identifying the specific nature of that right) "to be free from retaliation based on his political support of another individual," and that, as a direct result of his political support for Joseph, Defendants terminated his employment. (*Id.* ¶¶ 34, 35). The Court notes that such a First Amendment claim could arguably violate the right to freedom of speech and/or the right to freedom of association. *See, e.g., Palardy v. Township of Millburn*, 906 F.3d 76, 80-81 (3d Cir. 2018) (discussing First Amendment retaliation claims in the context of both freedom of speech and freedom of association, and finding that the plaintiff's claims included "a pure associational claim, so the district court should have analyzed [his] speech and association claims separately"). Although the Second Amended Complaint does not further specify the basis of Plaintiff's First Amendment claim, in his brief opposing Defendants' motion to dismiss, Plaintiff repeatedly describes his claim in connection with the right to freedom of association, and he makes no reference to the right to freedom of speech. (Docket No. 39 at 3, 5). Also, upon review of Defendants' brief and the prior oral argument held in this matter, Defendants appear to understand Count I as alleging a freedom of association claim, and not a freedom of speech claim. Accordingly, in considering Defendants' motion to dismiss, the Court will determine whether Count I plausibly alleges a First Amendment freedom of association claim.

Additionally, Plaintiff labels Count I as a claim of "political retaliation," Plaintiff uses the term "retaliation" repeatedly in his allegations, and both Plaintiff and Defendants refer in their briefs to Plaintiff's retaliation claim and the Second Amended Complaint's allegations of retaliation. However, in offering a standard for the Court to use in determining whether Plaintiff has stated a plausible political retaliation claim, both Plaintiff and Defendants recite the *prima facie* elements for a § 1983 First Amendment *discrimination* claim based on political affiliation or political association, rather than the elements of a *retaliation* claim based on political affiliation or political association. *See, e.g., Smith v. City of Allentown*, 589 F.3d 684, 692 (3d Cir. 2009) (cited by Defendants, presenting the *prima facie* requirements of a discrimination claim based on political affiliation); *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995) (cited by Plaintiff, setting forth the elements that a public employee must prove to make out a claim of discrimination based on political association).

To prevail on a § 1983 First Amendment retaliation claim, however, Plaintiff must prove the appropriate *prima facie* elements of such claim. *See, e.g., Otero v. Port Auth. of N.Y. & N.J.*, Civ. Action No. 14-1655, 2021 WL 3879092, at *6-11 (D.N.J. Aug. 30, 2021 (noting that it was unclear whether the plaintiffs alleged First Amendment retaliation claims, First Amendment discrimination claims, or both; remarking that the parties disagreed (without acknowledging the disagreement) on the *prima facie* elements for a First Amendment retaliation claim; and analyzing the plaintiffs' freedom of speech and freedom of association claims separately since both were alleged). The Third Circuit has indicated that a § 1983 First Amendment retaliation claim requires that a plaintiff show: "(1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link [existed] between the

7

constitutionally protected conduct and the retaliatory action.'" *See Palardy v. Township of Millburn*, 906 F.3d at 80-81 (quoting *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006), and indicating that such standard should be applied to an associational claim based on the plaintiff former police officer's union affiliation); *see also Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (setting forth this same standard in the context of a public employee (school district custodian and vice president of a custodial union), and noting that if a plaintiff satisfies these elements, the government may avoid liability by showing that it would have taken the adverse action even in the absence of the protected conduct (internal citation omitted)); *Otero*, 2021 WL 3879092, at *6 (relaying this same standard). Another version of the *prima facie* elements of a First Amendment retaliation claim is set forth by the Third Circuit in *Hill v. Borough of Kutztown*: (1) the plaintiff's activity is protected by the First Amendment, and (2) the activity was a substantial or motivating factor in the alleged retaliatory action, and if both are proven, shifts the burden to the employer to prove that the same action would have been taken even if the activity had not occurred. *See* 455 F.3d 225, 241 (3d Cir. 2006); *Otero*, 2021 WL 3879092, at *6.

The Third Circuit explained in *Falco v. Zimmer*, an unpublished opinion, that the version of elements presented in *Thomas*, 463 F.3d at 296 – also utilized in *Palardy* and *Baloga* – applies to First Amendment retaliation claims brought against the government by private citizens, while the *Hill* version, 455 F.3d at 241, applies where such claims are brought by public employees against their public employers. *See Falco v. Zimmer*, 767 F. App'x 288, 298-99 (3d Cir. 2019); *see also Otero*, 2021 WL 3879092, at *7 (discussing the analysis in *Falco*). It is not altogether clear whether the versions are always considered in this manner, however, since *Palardy* and *Baloga*, for example, both involved claims brought by public employees, and the *Thomas*

elements were considered. *See Otero*, 2021 WL 3879092, at *7. In any event, the Third Circuit recognized in *Falco* that "both iterations of the elements boil down to similar core considerations." 767 F. App'x at 299; *see Otero*, 2021 WL 3879092, at *7. Thus, "[u]nder either test, Plaintiffs must allege that they were engaged in constitutionally protected activities, and that such activities caused the retaliatory conduct." *Otero*, 2021 WL 3879092, at *10 (citing *Thomas*, 463 F.3d at 296, and *Hill*, 455 F.3d at 241). Accordingly, the Court finds here that, for the reasons set forth, Plaintiff has failed to allege a plausible First Amendment retaliation claim under either standard.[3]

In this case, during oral argument on Defendants' prior motion to dismiss, the Court indicated on the record that the Amended Complaint sufficiently alleged facts with respect to political affiliation since Plaintiff averred therein that he "openly supported" his uncle's candidacy for chairman of the board of the Housing Authority. (Docket No. 38 at 22-23). Because the Second Amended Complaint similarly alleges that Plaintiff openly supported Mr. Joseph's candidacy, the Court again finds that Plaintiff sufficiently alleges facts with respect to a plausible political affiliation component, and thus the element of his political retaliation claim requiring engagement in protected conduct is met here. Additionally, to the extent Plaintiff must show that a retaliatory action sufficient to deter a person of ordinary firmness from exercising his

---

[3] In comparison, to succeed on a claim of political affiliation discrimination, a plaintiff must make a *prima facie* showing that: (1) he "'works for a public employer in a position that does not require political affiliation,'" (2) he "'maintained a political affiliation,'" and (3) his "'political affiliation was a substantial or motivating factor in the adverse employment decision.'" *Smith v. City of Allentown*, 589 F.3d 684, 692 (3d Cir. 2009) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 243 (3d Cir. 2006)). If all the elements are satisfied, the employer may avoid a finding of liability by demonstrating that it would have made the same decision even in the absence of the employee's political affiliation. *See Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 664 (3d Cir. 2002) (citing *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995)).

To the extent that Plaintiff may have wished to frame his political retaliation claim as a discrimination claim, the Court finds that the first two elements of a discrimination claim are met here since the parties do not dispute that Plaintiff's position did not require political affiliation, and since the Court finds (as evaluated in the context of the retaliation claim) that Plaintiff has adequately pled a political affiliation component, *see* discussion, *infra*. However, the third element of a discrimination claim, a plausible showing of causation, is not met here for the same reasons set forth, *infra*, in the Court's discussion of causation in the context of Plaintiff's retaliation claim.

constitutional rights occurred, such element of a political retaliation claim does not appear to be in dispute since Plaintiff's employment was terminated.

However, with regard to the causation element, the last element under either standard, the Court previously explained during oral argument on Defendants' prior motion to dismiss that Plaintiff's allegations were deficient with regard to plausibly pleading causation. (Docket No. 38 at 23). In the Amended Complaint, Plaintiff averred that he "believes, and therefore avers, that an individual that is politically opposed to Mr. Joseph reported the Plaintiff's private message to representatives of Defendant Authority that are also politically opposed to Mr. Joseph." (Docket No. 16, ¶ 25). Plaintiff further averred in the Amended Complaint that he "believes, and therefore avers, that Defendant Walters' actions in his capacity as Defendant Authority's Deputy Director were taken in retaliation for Plaintiff's political support of Mr. Joseph." (*Id.* ¶ 26). In granting Defendants' prior motion to dismiss, the Court set forth, on the record and in clear terms, what was lacking in such allegations:

> The amended complaint avers there's a political foe who reported this policy, that person is unknown, and then another political foe to whom the report was made is also unknown. There's a lot of speculation there. And there needs to be real facts from which one could infer . . . a plausible causation element.
> And I think that you're not connecting it up with the decision-maker. I mean, you really pin your hat on Walters as the decision-maker here, but you don't connect any of that stuff.
>
> …
>
> And also, again, the complaint overall is lacking in this plausible nexus or this affirmative link from a decision-maker who is not connected in any way to these other kind of unnamed political foes that you make allusion to in the amended complaint. It sounds like there are additional facts that we could add that might fix it.

(Docket No. 38 at 23-26).

Now, in the Second Amended Complaint, Plaintiff adds several new allegations, which he says fix the deficiencies previously identified by the Court.  (Docket No. 39 at 4-5). Specifically, Plaintiff now alleges, "Sometime after Plaintiff's termination, two (2) current employees of Defendant Authority told members of Plaintiff's community that the Plaintiff was 'set up' by Defendant Walters as a direct result of his connection to Mr. Joseph."  (Docket No. 33, ¶ 30).  Plaintiff also now alleges, "Additionally, Mr. Joseph was informed by a former employee of Defendant Authority that the Plaintiff was 'set up,' and that his termination was a direct result of his connection to Mr. Joseph."  (*Id.* ¶ 31).  Plaintiff argues that these allegations "establish causation between the Plaintiff's protected activity and the Defendants' adverse employment decision, as they raise a reasonable expectation that discovery will reveal evidence of Defendants' retaliatory motive."  (Docket No. 39 at 5).

Upon consideration of all the allegations in the Second Amended Complaint, and paying special attention to the new averments highlighted by Plaintiff as adequately pleading causation, the Court disagrees.  Previously, Plaintiff's allegations were based on an unsupported belief that an unknown individual, who was politically opposed to Joseph, reported Plaintiff's conduct to other unnamed persons, who are also alleged to be politically opposed to Joseph.  The Court found such allegations to be insufficient to show causation for the reasons stated on the record. In the Second Amended Complaint, Plaintiff adds averments that unknown and/or unnamed individuals (current and former employees of the Housing Authority) told Joseph and other unnamed "members of Plaintiff's community" that Plaintiff was "set up" by Walters because of his connection to Joseph.  At best, Plaintiff newly alleges statements heard thirdhand, by unnamed individuals, without any context or background, including an indication of when such statements were made.  Plaintiff does not name the individuals who allegedly made such

11

statements, he does not identify their positions (past or present) within the Housing Authority, nor does he reveal how he learned of such alleged statements.  The addition of such allegations in the Second Amended Complaint is simply not sufficient to show a plausible nexus or causal connection between Plaintiff's termination and his alleged political affiliation.  Such highly speculative allegations do not raise a reasonable expectation that discovery will reveal evidence that Plaintiff's political affiliation (his support for Joseph) was the cause of his discharge, or that there was some causal connection linking Plaintiff's political affiliation with the decision to discharge him, as Plaintiff contends.  *See, e.g., Cook v. Condo*, No. 1:21-cv-361, 2023 WL 274506, at *7 (M.D. Pa. Jan. 18, 2023) (holding that a First Amendment retaliation claim based purely on the plaintiff's speculation was insufficient to state a claim upon which relief may be granted; and citing to *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), which stated that where a plaintiff's claims did not appear to be based in fact, but merely upon his own suspicion and speculation, the district court did not err in dismissing them as legally frivolous).  The Court therefore finds that Plaintiff does not plausibly plead the causation element of his political retaliation claim.

      Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts to state a plausible First Amendment retaliation claim based on political affiliation.  Defendants' Motion to Dismiss the Second Amended Complaint will be granted, and Plaintiff's claim at Count I will be dismissed.  As Plaintiff has had multiple opportunities to cure the deficiencies previously identified by the Court in the course of this litigation, but has been unable to submit allegations to the Court that show a plausible entitlement to relief on this Count, the Court finds that further opportunity to amend would be futile.  *See Vorchheimer v. Philadelphian Owners Ass'n*, 903

F.3d 100, 113 (3d Cir. 2018). Therefore, Plaintiff's claim at Count I will be dismissed with prejudice.

### IV. **CONCLUSION**

For the reasons stated, Defendants' Motion to Dismiss will be granted, and Plaintiff's Second Amended Complaint will be dismissed in its entirety. Count II will be *dismissed with prejudice* pursuant to Federal Rule of Civil Procedure 41(a)(2) since Plaintiff indicates that he is withdrawing his claim at that Count, and Plaintiff's claim at Count I will be *dismissed with prejudice* pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

An appropriate Order follows.

Dated: March 28, 2025                              *s/ W. Scott Hardy*
                                                   W. Scott Hardy
                                                   United States District Judge

cc/ecf:  All counsel of record